| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JORGE OMAR MARTINEZ, ) <br> ) <br> Defendant. ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Preliminary Injunction, (Doc. No. 2), and Motion for Default Judgment, (Doc. No. 11).

## I. BACKGROUND

Plaintiff filed its Verified Complaint, (Doc. No. 1), and a Motion for Preliminary Injunction, (Doc. No. 2), on November 30, 2011. Plaintiff served Defendant on December 8, 2011. (Doc. No. 7). Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Defendant had until December 29, 2011 to file an Answer to Plaintiff's Complaint. Defendant failed to respond and Plaintiff filed a Motion for Entry of Default on March 9, 2012. (Doc. No. 9). Default was entered on the same day. (Doc. No. 10). On March 13, 2012, Plaintiff filed a Motion for Default Judgment and Preliminary Injunction, (Doc. No. 11). Defendant has not responded and the time for doing so has expired.

## II. DISCUSSION[1]

---

[1] Because of Defendant's default in this matter, he is deemed to have admitted those facts alleged in the Complaint that are material to Plaintiff's claims against him. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

On or about May 20, 2003, Plaintiff Meineke Car Care Centers, Inc. ("Plaintiff" or "Meineke") entered into a Meineke Franchise and Trademark Agreement ("Franchise Agreement") with Defendant Jorge Omar Martinez ("Defendant" or "Martinez") which granted Defendant the right to operate a Meineke Center located at 8220 Georgia Avenue, Silver Spring, MD 20910 ("Center No. 435"). (Doc. Nos. 1 at ¶ 20; 1-1: Franchise Agreement). Pursuant to the Franchise Agreement, Defendant became authorized to: (i) operate an automotive repair center under the trade name "Meineke" under the Meineke system; (ii) display the Meineke name, logo and marks; (iii) receive training and access to Meineke's methods, procedures and techniques; and (iv) participate in an established network of licensed automotive repair centers. (Doc. No. 1 at ¶ 21).

Pursuant to the Franchise Agreement, Defendant agreed, among other things, to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%), five percent (5%), four percent (4%), or three percent (3%) of the center's gross revenues depending on the type of product sold or service performed, (Doc. No. 1-1 at Article 3.2); (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to eight percent (8%) of the center's gross revenues for all services except 1.5% of the center's gross revenues for the sale of tires, (id. at Article 3.4); and (iii) furnish Meineke with accurate weekly business reports of the center's gross revenues. (Doc. Nos. 1 at ¶ 22; 1-1 at Article 9.3).

During the term of the Franchise Agreement, Defendant breached his obligations and promises under, among other things, Articles 3 and 9 of the Franchise Agreement by failing to submit to Meineke accurate weekly business reports of the center's gross revenues, and by failing to pay Meineke all of the franchise fees and advertising contributions incurred by him. (Doc. No. 1 at ¶ 24).

On September 21, 2011, Meineke sent Defendant a Notice of Default for his failure to submit accurate weekly business reports of the center's gross revenues and failure to pay Meineke all of the franchise fees and advertising contributions incurred by him. (Id. at ¶ 25; Doc. No. 1-2: Carlet Aff.). Meineke informed Defendant that if he did not cure his defaults within five (5) business days, Meineke would seek its reasonable costs and expenses owed in collecting upon the outstanding balance. (Id.).

On October 4, 2011, Meineke sent Defendant a follow-up to the September 21, 2011 Notice of Default informing Defendant that if he failed to cure his defaults within thirty (30) days of the September 21, 2011 Notice of Default, Defendant would be subject to termination of his franchise license. (Doc. Nos. 1 at ¶ 26; 1-2: Carlet Aff. at ¶ 10). Defendant failed to cure his defaults. Accordingly, on November 3, 2011, Meineke sent Defendant a Notice of Termination informing him that his license for Center No. 435 was terminated effective November 4, 2011. (Doc. Nos. 1 at ¶ 27; 1-2: Carlet Aff. at ¶ 11).

Defendant also agreed, pursuant to Article 11.4 of the Franchise Agreement, that upon termination of the Franchise Agreement and for a period of one (1) year from the date of compliance he would not, "directly or indirectly (such as through corporations or other entities owned or controlled by [Defendant]) own a legal or beneficial interest in, manage, operate or consult with": (a) any business operating at the premises of Center No. 435 or within a radius of six (6) miles of the premises of Center No. 435 which business repairs or replaces exhaust system components, brake system components, or shocks and struts and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendant's Franchise Agreement terminated which business repairs or replaces

exhaust system components, brake system components, or shocks and struts.  (Doc. No. 1 at ¶ 29).

Notwithstanding Defendant's termination as a Meineke franchisee for Center No. 435, Defendant continues to operate a competing business from the premises of his former Center No. 435, Defendant continues to utilize the telephone number (301) 588-8878 that has been advertised extensively in conjunction with the Meineke name, and he continues to display Meineke's protected Marks on or about the premises of former Center No. 435.  (Doc. Nos. 1 at ¶ 31; 1-3: Declaration of Martin Skal; 1-4: Affidavit of Jeff Story).  At Center No. 435, Defendant continues to offer the same services he offered when he was an authorized Meineke franchisee.  (Doc. Nos. 1 at ¶ 32; 1-3: Skal Decl. at ¶ 4).  By continuing to operate a business using the Meineke Marks, Defendant is unfairly competing with Meineke and causing customer confusion as to the origin of the services being offered at this location.  (Doc. No. 1 at ¶ 32).

Pursuant to Article 17.3 of the Franchise Agreement, either party may obtain preliminary relief in the form of a preliminary injunction, as long as that party contemporaneously files a demand for arbitration of such claim and the final merits of such claim are determined in the arbitration proceedings.  Accordingly, contemporaneously with the filing of its Verified Complaint and Motion For a Preliminary Injunction, Meineke filed a demand for arbitration with the American Arbitration Association.  (Doc. No. 1 at ¶ 23).

### III. CONCLUSION

After reviewing the pleadings and memoranda of law in this action and the relevant authorities, the Court finds that Plaintiff is entitled to entry of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  Accordingly, Plaintiff's Motion for Preliminary Injunction, (Doc. No. 2), is **GRANTED**.

Meineke states that it "will seek a final judgment and order on the merits of the case through the arbitration action that is currently stayed pending the outcome of this action." (Doc. No. 11 at 2). Because the Franchise Agreement requires the final merits of Plaintiff's claims to be determined in arbitration proceedings, the Court finds Plaintiff's Motion for Default Judgment premature. Therefore, Plaintiff's Motion for Default Judgment, (Doc. No. 11), is **DENIED without prejudice** to Plaintiff's refiling after the arbitration panel determines the final merits of Plaintiff's claims.

    **IT IS, THEREFORE, ORDERED** that:

1. Defendant cease and refrain from, for a period of one (1) year from the date of compliance with this Order, directly or indirectly (such as through corporations or other entities owned or controlled by them) owning a legal or beneficial interest in, managing, operating or consulting with: (a) any business operating at the premises of former Center No. 435 located at 8220 Georgia Avenue, Silver Spring, MD or within a radius of six (6) miles of the premises of Center No. 435 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendant's Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

2. Defendant cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a

5

Case 3:11-cv-00607-RJC-DCK   Document 12   Filed 04/20/12   Page 5 of 6

name, logo or mark confusingly similar to the Meineke name, logo, marks or trade dress, including, but not limited to the black and yellow signage that lists Meineke's services.

3. Defendant do everything required by the telephone company, including but not limited to, the payment of all outstanding telephone bills and the signing of all relevant telephone authorization transfer documents, to release or transfer to Meineke the telephone number (301) 588-8878 now being used by Defendant's business located at 8220 Georgia Avenue, Silver Spring, MD 20910 that has been advertised in conjunction with Meineke's Marks.

Signed: April 20, 2012

Robert J. Conrad, Jr.
Chief United States District Judge